# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BRENDA BOLIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. CIV-06-080-SPS |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Brenda Bolin requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account

---

[1] Step one requires claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See id*. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity (RFC) to perform her past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account her age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on February 24, 1961, and was 44 years old at the time of the administrative hearing. She has an eleventh grade education and previously worked as a packing machine operator, poultry grinder, and waitress. The claimant alleges she has been unable to work since March 5, 2001, because of disorders of the spine, right shoulder, right hand, and hips; headaches; and pain.

**Procedural History**

On May 14, 2004, the claimant filed an application for disability benefits under Title II (42 U.S.C. § 401 *et seq*.) and an application for supplemental security income payments under Title XVI (42 U.S.C. § 1381 *et seq*.). Both applications were denied.[2] After a hearing on September 6, 2005, ALJ Lantz McClain found that the claimant was not disabled in a decision dated November 22, 2005. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

---

[2] The claimant filed prior applications for disability benefits and supplemental security income payments in January 2001, and the ALJ issued a partially favorable decision finding the claimant disabled for the closed period of December 1998 through March 2001. She filed another application for disability benefits in June 2002 and withdrew her request for hearing. The ALJ declined to reopen the previous applications because of administrative finality. *See Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990) (finding that the ALJ's decision not to reopen claimant's prior applications for benefits was discretionary and is not subject to judicial review under § 405(g)), *citing Califano v. Sanders*, 430 U.S. 99, 107-09 (1977).

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally; stand up to six hours in an eight-hour workday with normal breaks and 30 minutes without interruption; walk up to six hours in an eight-hour workday with normal breaks and 20 to 30 minutes without interruption; and sit up to six hours in an eight-hour workday with normal breaks and 30 minutes without interruption. The claimant could only occasionally bend and stoop and was to avoid work above shoulder level on the right. The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the regional and national economies she could perform, *e.g.*, order clerk and ticket counter clerk (Tr. 22).

## Review

The claimant contends that the ALJ erred: (i) by improperly determining she could perform other work in the national economy; (ii) by posing a flawed hypothetical question to the vocational expert as it related to limitations of the right shoulder and arm; (iii) by finding she had the RFC to perform light work; and, (iv) by improperly analyzing her complaints of pain. The Court finds the claimant's final contention persuasive.

The record reveals that the claimant had disorders of the back, discogenic and degenerative, and arthropathies that the ALJ determined were severe impairments (Tr. 19). At the administrative hearing, the claimant testified that her previous work as a waitress involved the use of both hands (Tr. 519). She had undergone surgery on the right shoulder

and had trouble finding work because she could not do much lifting or repetitive motion (Tr. 520). Her treating physician had recommended additional physical therapy for her shoulder, but the claimant did not have insurance and was unable to afford it. He saw little else to do for her pain other than to manage it and provided her with Darvocet. She also took sleep aids because of her pain. The claimant usually exceeded the recommended dosage and still awoke from pain at least two to three times per night (Tr. 521-22). The claimant could not lay on her right side because of her shoulder and slept with a pillow underneath her arm (Tr. 522). She could no longer type using her right dominant hand and had to use her left hand for reaching overhead. The claimant could not lift dishes with her right hand, vacuum, make her bed, or twist the cap from a jar or bottle. She could not use her right hand for scrubbing, cooking, or buttoning buttons or tying shoelaces (Tr. 523-24). She testified she could write with her right hand for a short time before having to rest (Tr. 525).

Related to her right shoulder, the claimant also suffered pain in her neck and had severe headaches. She reportedly experienced a migraine type headache at least once per month. The headaches caused the claimant to be "sick at [her] stomach" and required that she stay in bed. She would usually feel better the next day, but not well enough to go shopping (Tr. 525-26). According to the claimant, she also suffered from pain in her low back that ranged from a level of five to seven on a scale of ten and pain and numbness all the way down to her heel on the left leg (Tr. 526, 530). The claimant's pain from her shoulder and back frequently affected her ability to perform household chores and forced her to take several breaks (Tr. 527). She spent most of her day lying on the bed and approximately three

to four hours alternating between lying down or walking around or standing. The claimant could only sit in a straight-backed chair for ten minutes because of the pressure on her back, and her legs often went to sleep (Tr. 529-30). She could no longer do some of her previous activities such as swimming, bowling, sewing and could no longer lift her 25 pound grandson (Tr. 532). The claimant testified the pain in her shoulder was constant and that it affected her emotional state, *i. e.*, she cried several times a week (Tr. 533).

In his written decision, the ALJ summarized the claimant's testimony and concluded that it was "generally credible and consistent with the medical record but . . . not indicative of total disability[.]" (Tr. 21). This remarkable conclusion was the ALJ's entire analysis of the claimant's credibility.

Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias,* 933 F.2d at 801. Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir. 1987). But credibility findings should be closely and affirmatively linked to the evidence and not just a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

The ALJ's analysis of the claimant's credibility clearly fell below these standards. The only credibility factor arguably considered by the ALJ was the claimant's report to her physicians that she was not taking any medication (Tr. 398, 404), but the ALJ noted this not in his credibility analysis but instead in his summary of the medical evidence. Further, although the failure to take prescribed medication *is* an appropriate credibility factor, *see, e. g., Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (noting that whether the claimant took pain medication was an appropriate matter to consider in determining what attempts the claimant made to relieve her pain), the ALJ was required to analyze this factor in accordance with dictates of *Frey v. Bowen,* 816 F.2d 508, 517 (10th Cir. 1987), which he clearly did not do. Nor did the ALJ mention (let alone analyze) any of the evidence which controverted this observation, *e. g.,* treatment notes and the claimant's testimony, both of which indicate the claimant took the Darvocet prescribed by her treating doctor for pain (Tr. 398-401, 521), or otherwise identify and explain the specific evidence on which he relied in finding the claimant's complaints of disabling pain were not credible. *See Hardman*, 362 F.3d 679 ("[B]oilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."), *quoting Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) and *Kepler*, 68 F.3d at 391 (The ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible.").

Because the ALJ failed to follow the standards set forth in *Kepler* and *Hardman* in analyzing the claimant's credibility, the decision of the Commissioner must be reversed and

the case remanded to the ALJ for further analysis so the Court can assess "whether relevant evidence adequately supports the ALJ's conclusion." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). On remand, if the ALJ determines that the claimant's pain results in further functional limitations, he must include those limitations in the claimant's RFC and re-determine whether she is disabled.

## Conclusion

For the reasons set forth above, the ruling of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further findings consistent with this Opinion and Order.

**DATED** this 30th day of March, 2007.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**